IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised in this Volume.

HON. W. D. SIMPSON, CHIEF JUSTICE.
HON. HENRY McIVER, ASSOCIATE JUSTICE.
HON. SAMUEL McGOWAN, "          "

CASE No. 1082.

DENT v. BRYCE.

BUILDING AND LOAN ASSOCIATION v. SAME.

1. Where the law required the board of county commissioners to fix the rate of taxation for county purposes, and to certify the same to the county auditor, a notification to the auditor of the tax levy for county purposes, signed by the chairman of such board, is not, in support of a tax-title, the best proof of the action of the board, nor did it confer upon the auditor authority to make the tax levy indicated.

2. But where the law prescribed no special mode of action in the matter of a school tax, and did not direct the manner of notification to the auditor, a circular directing a tax levy for school purposes, signed by the school commissioner and addressed to the auditor, is sufficient authority for the levy of such school tax.

A

3.  Whether a special tax has been directed by the vote of a school district is a question of fact for the jury, and cannot be considered by this court.

4.  A circular purporting to have been issued from the comptroller-general's office should not be permitted to go to the jury as evidence, without proof that the signature of the comptroller-general thereto is genuine.

5.  A county treasurer having testified that he had searched his office, where tax executions were generally filed, for the executions issued by his predecessor, but could not find them, there was no error in receiving as evidence the county treasurer's execution book to show that the taxes on the lands sold, and here in dispute, were unpaid, and that executions therefor had been issued and returned unsatisfied.

6.  A verdict being rendered which the trial judge had charged the jury as matter of law that they could not render, his refusal to vacate it on motion for new trial was error. The jury are the judges of the facts, but they must take the law of the case from the judge's charge, which they are bound to follow whether right or wrong.

7.  The motion being in substance to vacate the verdict, was properly heard when made, although designated a motion on the minutes for a new trial.

---

Before THOMSON, J., Richland, April, 1879.

These were two actions heard together. The first, Jesse E. Dent against Sarah H. Bryce, was an action to recover a lot of land in the city of Columbia; the second, The Mechanics' and Farmers' Building and Loan Association, of Richland, against the same defendant, was an action to recover the Bluff plantation, six miles below Columbia, in Richland county. This city lot and plantation were both forfeited to the State of South Carolina, for want of bidders, at a delinquent land sale made by the treasurer of Richland county, on June 5th, 1876, for the unpaid taxes of 1874 and 1875, due by Sarah H. Bryce as owner of this property, and were sold as forfeited lands by the State, through the treasurer of Richland, on November 30th, 1876, and were purchased by the plaintiffs, respectively, who received each a grant dated December 1st, 1876, under the seal of the State, and signed by "Daniel H. Chamberlain, governor, S. C."

The taxes unpaid and for which, together with penalties and costs, this real estate was sold, included a county tax of four mills, and a school tax of one mill. The county tax was

inserted in the tax duplicate under the authority of the notification from E. M. Weston, chairman, stated in the opinion of this court. The signature and official character of Weston were duly proven, but no other evidence was introduced to show action by the board of county commissioners. The only authority for the school tax was the following circular:

OFFICE OF SCHOOL COMMISSIONER,
COLUMBIA, S. C., October 23d, 1874.

*A. L. Solomon, County Auditor:*

DEAR SIR—There are five school districts in the county that have levied a district school tax:

School district No. 1............................................One mill.
School district No. 2............................................One mill.
School district No. 3............................................One mill.
School district No. 4............................................One mill.
School district No. 5............................................Not any.
School district No. 6............................................One mill.
School district No. 7............................................Not any.
School district No. 8............................................Not any.
School district No. 9............................................Not any.

But you can do as you did last year; you can make a general levy of one mill on a dollar, on all taxable property in this county, for school purposes. I have the honor of being,
Your obedient servant,
D. N. SIMONDS,
*School Commissioner, R. C.*

The signature and official character of Simonds were duly proven.

Plaintiffs offered in evidence the original return of Sarah H. Bryce, made August 13th, 1873, which included this plantation and city lot, whose assessment was increased by the board of equalization, and, also, personal property to the amount of $1,694.

W. H. Gibbes, witness for plaintiffs, testified that he was county treasurer of Richland, and that tax executions were gen-

erally filed in his office, but were not preserved with care; that he had made diligent search for the executions against Mrs. Bryce for the taxes of 1874–75, but could not find them; that the treasurer's execution book showed that two executions had been issued against the personal property of Mrs. Bryce for said taxes, and were returned unpaid and unsatisfied.

In the settlement of the case, the presiding judge reports his charge, and the motion for new trial, order thereon, &c., as follows:

The court will now call the attention of the jury to certain points made by the defense, being in the nature of exception to the proofs of the plaintiffs.

1. The want of power on the part of the assessors to assess the land in 1874 at a higher value than that contained in the defendant's listing or return, the defendant denying the right of the assessors to increase the valuation. Provision was made by the A. A. 1874 for a county board of equalization, giving them power to enter land on the tax list at its *true value.* This is the action objected to, which seems to the court without force.

2. Exception was taken to the levy of the tax of 1873 in relation to the school purpose. The defendant claims that there were no meetings of the taxpayers in the different school districts in Richland county, except in School District No. 1. You have heard the testimony of Mr. Agnew and others as to such meetings held here. You are without proof of actual meetings being held in the other school districts of the county. If there were no meetings in the school districts it would affect the title. If no meetings were held, then no school tax could be levied; or if meetings were held and not formally conducted, and a sale made thereunder for taxes, the title would be defective; a very small tax illegally levied (laid on) would vitiate the title. If you find such meetings were not held, the court instructs you the title is defective. The question of meetings, however, is one of fact, and for the jury.

3. Objection has been made, that a paper signed by E. M. Weston (without seal), chairman of county commissioners, directing a levy for county purposes and new court house, was informal and defective. Whether Weston is chairman of board

of county commissioners or not, is a question of fact for you, though the evidence that he was seems to be abundant and unimpeached.

4. The property in question belonged to the defendant. She took the same under her husband's will. The title vested in her, subject to payment of debts. I instruct you, she is the owner of the property, at least in the sense which renders it subject to taxation in her hands.

5. There was no proof by the production of the papers that executions against the defendant had been issued for the payment of taxes. I instruct you, that if there was personal property sufficient to pay the taxes on the real estate, it should have been exhausted first and the land not returned as delinquent. It was the duty of the officer to levy on the personal estate before resorting to the real estate. This is a question of fact for the jury. If the jury come to the conclusion that there was personal property enough to pay the taxes, the land was improperly returned as delinquent. In 1873, there was considerable personal property—more than enough to pay the taxes at that time. If, when the executions were issued, there was personal property to have satisfied them, you should find for the defendant.

The grants in these cases were executed by the governor to the plaintiffs. The practice seems to have fluctuated since 1871. According to the Revised Statutes, the State became the purchaser on the same terms as a private individual. When a sale was made, the governor was required to issue the patent and the title then vested. The act of 1874 changed this. It declares that the land shall be forfeited and remain in the State until sold as forfeited real estate, and I infer that the auditor should make the deed. This was amended or changed by the act of 1875, which requires the governor to sign the patent. Under the act of 1876, it is clear the governor should not sign the patent. The lands in these cases were sold under the act of 1876, and I think the county treasurer should have made the title. The governor has no right, under this act, to convey the land. As a question of law, I instruct you, the grants do not convey the lands to the plaintiffs, and it follows your verdict should be for the defendant.

The court was requested to instruct the jury, that if there was a meeting in School District No. 1, a failure to hold meetings in the other school districts of the county could not affect the title in School District No. 1. The court instructed the jury, that if there was a levy of a school tax for the whole county, and if any school district had held no meeting, that would vitiate the title.

The jury found verdicts for the plaintiffs in both cases.

Upon the rendering of the verdict, the defendant's counsel gave notice of a motion for new trial upon the minutes of the court. These motions were afterwards heard and refused, as appear by the orders below in this case.

The motion for new trials was urged upon several grounds, but chiefly upon the ground that the verdicts were against the charge of the presiding judge. This is correct, and had the court continued to construe the law to be as it was stated to the jury, new trials would have been granted. But after argument of counsel, and a further examination of the tax acts, since 1870 to the present time, than could be had on the trial, the court is of opinion that the governor was the party to issue the deeds or patents, and that in this respect the parties' titles were good.

The jury having solved the other questions in the case in favor of the plaintiffs, new trials were refused.

The case was brought by defendant to this court by a simple notice of appeal from the order refusing a new trial, and upon the exceptions to testimony taken during the trial.

Other matters are stated in the opinion.

*Mr. E. R. Arthur*, for appellant.

The board of equalization could act only in 1870, and every fifth year thereafter. *Const.* Art. IX. § 6. No proof that an execution against real estate was ever issued. *Abbott's Tr. Ev.* 703, 704. No county tax was levied. 14 *Stat.* 274 § 3; *Blackf.* 98. The circular is not signed by a majority of the board, nor attested by the clerk, nor under seal, and does not profess to be under resolution. *Const.* Art. I. § 14; *Cooley's Const. Lim.* 521; 1 *Strobh.* 402. No school tax levied. 14

*Stat.* 584. Part of tax being illegal, the sale is void. *Black: Tax T.* 160. The charge of the judge was the judgment of the court, and could be reviewed here, but was binding upon the jury. *Const.* Art. IV. § 4. It was the duty of the judge to construe the grants or patents. 3 *S. C.* 253; 6 *Ibid.* 351; *Hill. New Tr.* 326; 24 *Geo.* 372; *Stark. Ev.* 797. The instruction of the court, whether correct or incorrect, is binding on the jury. 4 *Mass.* 79; 4 *Whart.* 66; 40 *Cal.* 545. And if they fail to follow it, a new trial should be granted. 11 *Mees. & W.* 670; *Stark. Ev.* 797. A refusal to grant a new trial is error. 4 *Mass.* 79.

*Mr. W. A. Clark,* contra.

A motion on the minutes for new trial does not include this motion. *Code,* § 288, subd. 4; 3 *Wait's Pr.* 423; 7 *Rob.* 392; 19 *How. Pr.* 409. When the verdict is contrary to law a new trial will be granted, but not when contrary to an erroneous charge. 3 *J. J. Marsh.* 153; 2 *Geo.* 1; 17 *Ibid.* 267; 9 *Miss.* 400; 1 *Yeates* 327; 26 *Geo.* 701; 20 *Amer. Dec.* 131, notes; 2 *N. & McC.* *286. No formal executions for the collection of taxes are required. *Gen. Stat.* ch. XIII., §§ 3, 6; 3 *Bl. Com.* 6. Gibbes' testimony made the execution book the best evidence attainable. 31 *N. Y.* 115. Since 1873 (15 *Stat.* 479), the county commissioners do not fix the rate per centum of county taxes; it is done by the appropriation acts. 15 *Stat.* 515, 657; 16 *Stat.* 9, 286, 549. The courts will not require a seal to sustain the order of the county commissioners. 3 *Rich.* 35. The orders of the comptroller-general are all transmitted in the form of circulars. All of the exceptions here are too general to be considered. 3 *Wait's Pr.* 205.

*Mr. J. P. Arthur,* in reply.

September 20th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. These two cases were heard together on appeal, and as they involve the same questions, but one opinion will be pronounced.

The questions involved arise upon exceptions to the rulings of the Circuit judge upon the testimony offered at the trial and upon the refusal of the Circuit judge to grant a new trial, the defendant being the appellant in both cases. The actions were brought to recover real property, the plaintiffs in both cases claiming title under a tax sale, to support which they introduced a patent executed by D. H. Chamberlain, then governor of the State, conveying the land in dispute, and reciting that it had been sold to plaintiffs by Darling, the treasurer of Richland county, as forfeited land, on the 1st day of December, 1876. The patent recited the various acts under which the land had become forfeited. The plaintiffs, feeling it incumbent upon, them to make out a complete title, undertook to show that all the steps necessary to forfeit the land had been taken by the proper officers previous to the sale at which they purchased, and that the sale had been conducted according to law. To this end, their testimony was directed, among other points, to the following: First, that a proper levy of county taxes had been made and ordered by the county commissioners; second, that the school commissioner had also levied a proper tax; third, that the county treasurer had conducted the sale under legal regulations from the comptroller-general; and fourth, that previous to the sale, executions had been issued to sell personalty, which had been returned unsatisfied. There were other points, but they need not be considered.

To prove the first point, a paper purporting to be a circular from E. M. Weston, chairman of the board of county commissioners of Richland county, directing the county auditor to levy a tax of four mills for county purposes, was offered. This paper was signed by E. M. Weston, as chairman of the board, and was without seal. To prove the second, a similar paper, purporting to come from the school commissioner, D. N. Simonds, was offered. To prove the third, a circular purporting to come from Thomas C. Dunn, comptroller-general was offered; and to prove the fourth, Mr. W. H. Gibbes, treasurer of Richland county at the time of the trial, was allowed to show from the books in his office that executions had been issued and returned unsatisfied. Mr. Gibbes introduced the execution book. He testified that he

had made diligent search for the original executions, but could not find them, and he was satisfied, from the tax duplicate and the entries in the execution book, that the executions were issued and had been returned unsatisfied, as there was no evidence of payment. The defendant objected to all of this testimony, upon grounds which will be considered in their order.

The judge charged the jury, as matter of law, that the governor had no legal power to execute the patents, and, on that account, he instructed them that their verdict should be for the defendant. Notwithstanding this positive charge upon a matter of law, the jury found for the plaintiffs. The defendant moved for a new trial. This motion was urged upon several grounds, but chiefly because the verdict was rendered against the charge of the judge. The judge refused the motion, saying in substance that, upon reflection and a more thorough examination of the tax acts, he had become satisfied that the governor was the proper officer to issue the deeds or patents in such cases; and inasmuch as the jury had followed the law, although against instructions, he would refuse the motion for a new trial. We have nothing to do with the questions of fact involved in the case. This is not a case in chancery, but a case at law, and our jurisdiction is confined entirely to errors of law, if any, on the part of the Circuit judge, brought before us by exceptions.

Was it error on the part of the Circuit judge to admit as evidence the paper purporting to be a paper signed by E. M. Weston, chairman of the county commissioners, to show that a levy of four mills had been directed by that board? The point that this paper was without seal did not appear in the "*case*" when first made up, but the case was amended afterwards by leave of the Circuit judge. This was objected to by the respondent at the time, but this objection has not been urged here, and it will not be necessary to consider it.

Formerly the power to assess taxes for county purposes was vested in the county commissioners. See *Act of* 1869, 14 *Stat.* 274; *Gen. Stat.* p. 148, § 10. Their warrant of assessment, signed by the county commissioners, with the seal of the county, certified by the clerk, was the treasurer's authority to collect the taxes thus levied. 14 *Stat.* 237; 15 *Stat.* 274, 407. In the

absence of this warrant, thus prepared and verified under the act of 1869, it would have been illegal for the treasurer to act. The act of 1869, however, was repealed by the act of 1873, and a change made in the mode of assessing and collecting both State and county taxes thereafter. *Act* 1873, 15 *Stat.* 479. By this last act the rate per centum of taxes for State purposes was fixed by the legislature. 15 *Stat.* 515, 657; 16 *Stat.* 9, 286, 549.

This scheme was in force in 1874, when the taxes which have given rise to this case accrued; and under the act to raise supplies for the fiscal year commencing 1st November, 1874, § 8 (15 *Stat.* 658), a maximum of three mills in each of the counties in the State was provided for, the exact rate to be fixed by the county commissioners, and by them to be certified to the county auditor. It was necessary for the plaintiffs in these cases to prove that this rate for the county of Richland had been fixed by the county commissioners, and that it had been certified by them to the county auditor. The precise question between the parties as to this point was whether any rate of taxation had been fixed by the county commissioners and had been certified by them to the county auditor. The burden of proving this fact was assumed by the plaintiffs, and the circular of E. M. Weston was permitted by the judge to be introduced for that purpose. This circular is as follows:

"*A. L. Solomon, County Auditor, Columbia, S. C.:*

"SIR—You are hereby notified to levy for current county expenses three mills, and for the new court house one mill, upon all property, real and personal, returned for taxation in Richland county."

         (Signed)          "E. M. WESTON,
                           "*Chairman Board C. C.*"

It is a general rule of evidence that the best evidence which the nature of the question admits of must be introduced. This rule admits secondary evidence, where the party has shown that it is out of his power to produce primary. We think that the admission of this paper violated this general rule.

The act of the general assembly required that the rate of

taxation for county purposes should be fixed by the county commissioners, and should be certified by them to the county auditor. The question at issue was, had the rate of county taxes been thus fixed and certified? Now, was this note of the chairman of the county commissioners, addressed to the auditor, the best evidence which that question admitted of? It required the action of the board, as an organic body, to fix the rate. This action should have been expressed by resolution or in some other way, showing the assent of the board, or a majority of them. The note of the chairman did not show that the board as a body had taken any action whatever on the subject. It is simply a notification from himself directing the auditor to levy the rate therein specified. The best or primary evidence which this fact required was the production of the proceedings of the board. If this was out of the power of the plaintiffs, then the way would have been open for the introduction of secondary evidence. And upon proof of this fact such secondary evidence as was within the reach of the plaintiffs might have been relied on; but there was no attempt to show, even *prima facie*, that the plaintiffs had exhausted all effort to produce the action of the board, or that any had been taken. The plaintiffs rested their case, as to this point, upon the note of the chairman alone. This, under the facts, we think was not only insufficient but incompetent at that stage of the case, and there was error in admitting it.

The act of 1874 not only requires that the rate of taxation shall be fixed by the county commissioners, but also, when fixed, that it shall be certified by them to the county auditor. This contemplates some regular proceedings, in such shape as to be the subject of a separate certificate, and the auditor had no authority to act until he received this certificate. As has been said, the primary evidence would have been the production of these original papers. If proof had been offered that these papers were out of the reach of the plaintiffs, the foundation would have been laid for the introduction of secondary evidence, and then possibly as secondary evidence this note of Weston might have been introduced. But even then, if this paper was intended to prove that the tax had been levied by the county

commissioners, it would amount to no more than a written declaration of Weston that the board had taken this action. It would be proving by the parties who testified to Mr. Weston's signature that Mr. Weston, by written declaration, had said that the board had levied the taxes, which he directed the county auditor to have collected. In this view it would be objectionable as hearsay, and therefore incompetent.

The exception of appellant as to the note of the school commissioner is not as well taken. The school commissioner had no power to direct a levy until authorized by a vote of the township. Whether this vote had been taken, was a question of fact to be passed upon by the jury and is not before this court. The question here is whether the paper in question was competent evidence to the point that a levy had been directed by the school commissioner. The act prescribes no special mode of action on the part of the school commissioner, nor does it direct the manner of notification to the treasurer. In the absence of all statutory regulations on the subject, we think any written communication by the school commissioner to the treasurer, directing the levy, would be sufficient. In this case the original paper, after proof of the signature of the school commissioner, was introduced. We see no error in permitting this paper to go to the jury.

The Dunn circular stands upon a different ground. That was introduced by the respondents to account for the fact that the lands had been sold at a different time from that prescribed by the act in reference to the sale of forfeited lands. The comptroller-general, it appears, was empowered by a special act—"An act to provide for extending the time of holding delinquent land sales in the several counties of the State," 15 *Stat.* 936—to change the time of making these sales; and, by virtue of his powers under this act, it was alleged that he had fixed the time for these sales at a different time from that required by the general act on this subject. And this circular was offered and admitted to prove this fact. It purported to come from the comptroller-general's office, but there was no proof that the signature attached was genuine. In the absence of such proof, it had no foundation to go to the jury as an official paper, and we

think it was error on the part of the Circuit judge to admit it in that form.

We see no error in the ruling of the Circuit judge as to the evidence of Mr. Gibbes on the subject of the executions. Mr. Gibbes proved that he had looked for the original executions but could not find them. The execution book of the treasurer was then introduced, to show by the entries therein that these executions had been issued and had been returned unsatisfied. Mr. Greenleaf, vol. 1, p. 483, says that books "kept by persons in a public office, in which they are required, whether by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties, * * * are generally admissible in evidence, notwithstanding their authenticity is not confirmed by those usual and ordinary tests of truth, the obligation of an oath and the power of cross-examining the person on whose authority the truth of the documents depends." This book, we think, belonged to that class. True, it indicated higher and better evidence, to wit, the original execution, but these were lost or mislaid, and it was not in the power of the plaintiffs to produce them. The book then became secondary evidence, which, under the rule, was admissible.

This brings us to the last ground of exception—the refusal of the judge to grant a new trial.

The plaintiffs relied upon the deed or patent executed by the governor. This paper involved two questions—first, the authority of the governor to execute such a paper; and, second, the fact of execution. The first was a question of law and the second a question of fact. To entitle the plaintiffs to recover, it was necessary that these questions should be resolved in their favor, because without this—let the other facts of the case be as they might—the defendant was entitled to the verdicts. The court was the judge of the question of law and the jury of the question of fact. Under our system this is the case in all jury trials. The court decides the questions of law and the jury the facts. The value of this system depends greatly upon the preservation of this distinction. The functions of each should not only be preserved intact, but should be kept separate and apart. So important was this regarded by the founders of our judicial

system that it was expressly provided in the fundamental law of the State government—the constitution—that the judges should not only be limited to questions of law, but should be forbidden to comment on the facts. True, there is no such express inhibition upon the jury invading the province of the court, but this, no doubt, was because such invasion was not supposed possible.

It needs no authority, then, to say that the jury is bound to take the law from the court. This principle applies in every class of cases, except one not necessary now to be considered. And when the law is announced by the court it is the law of the case until overruled by a higher authority. It follows, then, that a verdict in direct conflict with the law of the court is a verdict against the law, and will in all cases be vacated in the first instance, either *sua sponte* by the judge, or on motion of the aggrieved party. Any other doctrine would lead to the utmost confusion. If the jury could question the charge of the judge, the result would be that in every case the whole case, both law and facts, would go to the jury, under the hope that, whatever might be the charge of the judge at the time, he could be satisfied afterwards that he was in error. This could not be tolerated. It would degrade the judiciary and unhinge the whole system. The argument of the respondent, by which he attempts to draw a distinction between a verdict contrary to the charge of the judge and one contrary to law, though ingenious, fails to meet the case. In fact, that doctrine would open the door to the very evil which a separation of the powers and duties of the court and jury was intended to prevent. So far as the jury is concerned, there is no such thing as the charge of the judge being contrary to law, because, whatever may be his charge, it is the law to them.

The question before the court is not whether the governor was authorized to issue the patent—and we have not considered that question—but whether the judge should have set aside the verdicts, which, as matter of law, he had directed the jury they could not render. In our opinion it was error on his part not to vacate their verdicts. Whether this motion was properly made to the court below on the minutes of the judge, under the code, we think is not material here. The motion was, in substance, to vacate the

verdicts as contrary to the law given to the jury by the court, and it was in order for the judge to hear it when made.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.

McIVER, and McGOWAN, A. J.'s, concurred.